To our next case, number 12-4664, United States v. Randall McGee. Mr. Byrne, we'll be glad to hear from you, sir. Morning, your honors. May it please the court. My name is Jonathan Byrne. I'm here on behalf of Randall McGee. A commentator once wrote that very few drivers can traverse any appreciable distance without violating some traffic regulations. That was true when it was written in 1969, and it's doubly true today after four and a half decades of further regulation. Even more important is that in the 44 years since that was written, courts have repeatedly expanded a police officer's ability to engage in criminal investigation of persons subject to a traffic stop that are not related to the reason that the stop was made. And therefore, it's incumbent on the courts to ensure that when a police officer says, I stopped this vehicle for reason X, that there is some factual basis to believe that reason X is correct. On the record before us in this case today, the reason given for pulling over the car in which Mr. McGee was a passenger doesn't have any basis in the facts that were developed during the second suppression hearing below. But you agree that to support your position ultimately, then this court would have to overturn Judge Johnson's credibility determination? Yes, Your Honor. And I recognize that's generally a tough row to hoe in this court, but this is one of those rare situations where the totality of the record undermines Judge Johnson's conclusion, because his conclusion that Officer Halstead's testimony went unimpeached is simply not correct. We have independent, third-party, uncontradicted evidence that indicates that the third brake light, which was the only basis for the traffic stop, it was functional on the vehicle when it was found after the traffic stop, that service records of the vehicle indicate that it was never repaired, there were never any complaints made to the rental agency that owned the vehicle. There's simply no reason to believe that it happened not to work on a single occasion that serendipitously provided the basis for a traffic stop that led to the seizure of narcotics. And the fact that the basis for denying the suppression motion is a determination of the officer's credibility doesn't insulate that determination from review from this court. And courts, other courts, have recognized that in similar cases, situations involving a brake light that was allegedly defective or tail lights that were defective, that when the vehicle is found later, everything is in order and there's no indication that there was a problem with the vehicle in the interim, that probable cause doesn't exist to support those stops. If there aren't any further questions on the traffic stop issue, I'll move on to the sentencing issue. The main sentencing issue in this case, I think, is the district court's determination that the sentence it imposed was imposed in order to, quote, send a message, unquote, back to Detroit, which is where Mr. McGee is from, to parties unnamed in a manner unknown. The basis for this, or part of the reason for imposing this sentence, was an ex parte, off-the-record conversation between the district court judge and the United States attorney. The district court doesn't explain how this sentence is going to send any kind of message. There's no indication it made the news in Detroit. The Garden Variety criminal case in Charleston, West Virginia, there's no reason for it to make the news in Detroit. And the district court didn't give any reason why a lesser sentence would not send the same message, why a 55-month sentence was necessary to do that. But didn't the court, in tying into Detroit, because at first I was concerned about this too, but then in looking at 331 of the JA, the court says, I've considered it an aggravating factor when drugs were being brought in from out of state because, essentially, he starts a new sentence, that indicates a higher level in the distribution system than somebody simply dealing on the streets. And so isn't that a reason other than just bias against a certain group of people? It would be if there was some, if there was more evidence in the record that Mr. McGee actually was doing any selling of the drugs in the Southern District of West Virginia. All the evidence indicates that he and the person who was driving the car he was in were passing through. And in addition, that still becomes a, you're from Detroit, you're getting hit harder. You're a higher level dealer, is how I read that. I think it makes an assumption that's not necessarily supported, that someone's a higher level dealer just because they come from one area to another because the market, in essence, dictates that they're going to make more money selling in one area versus another. Well, I mean, it was more to the facts than just that comment. He had a ticket, a bus ticket in somebody else's name. He had suspicious text messages. He had unexplained large amounts of cash and conflicting stories about his trip. I mean, all those factors were considered by the judge. But, Your Honor, those were all factors that relate to the relevant conduct issue. And, of course, our position is that the District Court erred in considering that as relevant conduct. But it could go to Judge Keenan's comment about it's a higher up thing. That's evidence that something's going on. Well, with due respect, Your Honor, it's evidence of something, but it's not necessarily evidence of the sale of drugs. There was nothing, there was no evidence at the time of that initial stop, the stop at the bus station, that Mr. McGee had been selling drugs. There were no controlled buys. There was no C.I. who said this person has been selling drugs or has been bringing drugs for other people to sell. What about the text message? Are they moving? How many do you have left? The total should be $6,075. Isn't that circumstantial evidence of drug transactions? If you read it looking for circumstantial evidence of drug transaction, it is, but it assumes the conclusion. Well, I mean, in the context, though, of somebody being instructed to buy a ticket in a different name, you know, it's unusual, isn't it? I couldn't say whether it's unusual or not, Your Honor. I don't have a lot of experience in that area, but it's worth noting that after the officers seized Mr. McGee and they had this money that they think is drug proceeds and they seized the drug proceeds, they let him go. They didn't arrest him. They didn't hold him seeking any sort of additional information to charge him either in state court or federal court. So there's some reason to think that there's not enough evidence there to construe that as the district court construed that evidence. Now, he was carrying, what, 400 pills at the time of the traffic stop? I think that's correct, Your Honor. Okay. And at the relevant conduct time, he gave the, what exact explanation did he give regarding the $5,800? Did you go over that for us? If I remember correctly, He couldn't explain it, right? He gave some conflicting stories. He traveled to see the mother of his child, but he really couldn't explain where the $5,800 came from. And I believe he also suggested they were gambling proceeds. Okay. Which, for those who aren't from the Charleston area, there is a casino and racetrack just outside of town. So that's not a far-fetched explanation. But there are many reasons why someone could have that amount of cash on them. And again, it depends on if you're looking through the lens of, we think he was dealing drugs, therefore these things confirm that we don't have any other evidence that he was dealing, what does this tell us about him? Okay, now our lens, I think it is important for us to know what was the trial court's evidentiary lens. And it was a preponderance, wasn't it, on the relevant conduct? On relevant conduct, yes, Your Honor. Okay. And the district court admitted in making the ruling that it's a close call. And so Judge Johnson recognized that this was not an easy case on that issue. If there are no other questions, I'll reserve the balance of my time. Thank you very much. As to the, when it comes to the stock, the United States under the clear error standard that the district court did not err when it found that Officer Halstead was credible in his finding. That's a standard that is left to the district court because the district court is in the best position to judge the, to observe the witnesses and determine its credibility. The district court had that opportunity in this case on two occasions when Officer Halstead testified during two pretrial motions hearings. During those hearings, Judge Johnson found that Officer Halstead was a frank, that he was earnest, and that his recollection of the events was unwavering. Judge Johnson further found that Officer Halstead was unfailing during cross-examination and that he was unwavering in his testimony that the center brake light did not work during the day that he met with the vendor in this case. Judge Johnson further found that Officer Halstead's testimony was the only direct evidence as to the condition of the vendor's center brake light on July 26th of 2011. Therefore, Officer Judge Johnson found that the officer had probable cause to stop the vendor that day. This court is has to view the evidence in the light most favorable to the government when reviewing the district court decision and based on that standard, the United States believes that the district the judge's ruling should be affirmed. As to the sentencing the within guideline sentence is presumptively reasonable. The defendant's sentence is both procedurally and substantively reasonable. Can a federal judge impose a greater sentence on a defendant because he or she is from out of state? No, not just because he or she is out of state. I believe that's a factor that the court can consider. Why is your answer no? Apart from it just smells bad I think we all agree to that, but what's at the bottom of your answer? I don't believe that that's not what the district court did in this case. I didn't suggest that. I'm asking you, can a judge routinely or habitually say drug dealers who come into this jurisdiction from outside the jurisdiction are going to be treated more harshly than drug dealers from around here? I think that that's a proper consideration for the district court to consider. What did I say that changed the prior hypothetical? Well, I think the prior was can he consider out of state? What the district court did in this case was say this area, Southern District of West Virginia, has a problem with drug dealers coming from Detroit to this area to target Southern District of West Virginia as a distribution place. It's well within the district court's discretion to look at what area, what problem is facing what law enforcement problem is facing the Southern District of West Virginia. And what the district court did was recognize that in the Southern District of West Virginia, there is a problem with Detroit drug dealers traveling to the Charleston, West Virginia and surrounding areas to distribute drugs. That has become a significant law. So if a drug dealer comes from Newark, New Jersey to the Southern District, it's okay to give that drug dealer a lesser sentence? Because that drug dealer is not from Detroit? I think that what the district court said was I look at drug dealers who travel in particularly as hiring drug distribution. So if the defendant had been from Los Angeles, you think the judge would have said the same thing? I'm going to send a message to the people in Los Angeles County. I think what the judge said was first and foremost I look at drug dealers who travel as hiring the drug distribution rate. I don't see you as a street level drug dealer. You have traveled with drugs for distribution purposes. He considered that an aggravating factor because that indicates that you're not just a street level drug dealer, you're traveling interstate to distribute drugs. It didn't matter where that person came from. And then he said in particularly we have another problem on top of that which is we have an influx of drug dealers from Detroit. I'm not following that. The judge considered two different factors. He considered the fact that this defendant one, traveled interstate to distribute drugs. Well first he considered, if you look at the J.A. at 331, the judge said first I find the fact that you traveled interstate I consider you farther. Oh but the judge had the PSR and the PSR is just filled with information about Mr. McGee coming from Detroit. He's got a record in Michigan. He clearly is from Detroit. Judge didn't just stumble on that. Judge knew that before he took the bench. But what the judge said was that the defendant came from out of state and brought pills with him. Well he said he came from Detroit. Correct. Yes, he did later. But the first time that the judge addressed the fact that he came from out of state he just said you came from out of state which I find to be an aggravating factor because it indicates a higher level in the distribution system. You're not just a street level drug dealer. A West Virginia native who manages to get a hold of 600 oxycodone pills locally. And actually I've had that case. The Bell case. I guess that was Western District of Virginia. But oxycodone aren't just sold in Detroit. It's sold everywhere. That's correct. And if you're clever enough and you can marshal the resources you can get 600 pills in Charleston or Huntington or Detroit or Pontiac Michigan or Baltimore or Richmond anywhere. They'll sell them to you. That is correct. And indeed doctors will give you a prescription for them. Look I don't want to spend any more time on this unless you want to. But as Judge Keenan said on the face of it, it makes me nervous to see a district judge talking about Detroit in this way. People from Detroit. I think what the district judge said was that when he addressed the factors he first said, one, you possess drugs for distribution. Which was the offense. The offense of conviction. You possess pills and you possess cash at the bus station two weeks previous to that. Which the judge found was relevant conduct. Which contributed to one of the most serious law enforcement problems in the Southern District of West Virginia that the court saw on almost a day to day basis. And then the court said, and I find that you traveled from out of state and brought the pills with you. Which I find to be an aggravating factor because it indicates a higher level in the distribution system. And that's at JA 331. At that point the district court didn't say you came from Detroit. He just said you came from out of state and brought them. You're not a street level drug dealer. You're traveling to do it. And then he says. What about the guy who was driving the car? Is he a high level drug dealer? Mr. Moore. The court specifically said, I found that and it further indicates later on in the JA sentencing that the defendant had paid that individual to bring him to the West Virginia area. So is he a high level drug dealer? Aiding and abetting a high level drug dealer? Does that make you a high level drug dealer? My response to you would be no. So two guys coming from Detroit. One's got a car being paid to transport the other one who's got the pills. Do you have to know what the driver knew about Mr. McGee's activity before you could be able to charge him with aiding and abetting? He did not get charged. Did he have an immunity agreement? Because he did testify. He didn't testify, but he made a statement. And whether or not he knew what he was driving Mr. McGee for there was no evidence of that. Other than he gave a statement to the officers that he was paid by Mr. Moore to bring him to the Oak Hill West Virginia area. And then after the district court made the reference to the fact that the defendant traveled from out of state, which he found to be aggravating, he then says the need for deterrence from individuals like the defendant traveling from out of state and particularly Detroit. For those reasons the court found those three things specifically to be aggravating factors. Therefore the court declined to bury. And then the court went on to address the defendant's criminal history and the fact that he had had prior sentences that had not deterred him from criminal activity and therefore the defendant needed a stiffer penalty. And the seriousness of the offense and the fact that the offense involved opiate pills, which the court found created serious addiction problems and were very dangerous drugs causing problems in the community and ruining lives and were very difficult addictions to break which called for stronger sentences which the court had been imposing regularly in pill cases. And considering all those matters were why the court imposed the sentence that it imposed and it didn't provide, it didn't give greater deference to the fact that the defendant was from Detroit. It considered all of those factors when it imposed its sentence of 55 months. And it adequately explained its sentence and therefore the United States Police said the sentence imposed by the district court is reasonable. If the court doesn't have any more questions. Thank you very much, Ms. Coleman. Your Honor, I want to return first briefly to the stop to the Fourth Amendment issue because through its brief and now through its argument here today, the government simply ignores the second suppression hearing. They've never discussed the facts that were developed in that hearing. They've never taken on the cases we cited that showed that in similar cases the courts have said that's a Fourth Amendment violation if it stops made on that basis. And the fact that they ignore it doesn't mean the facts there don't exist and those cases don't exist. And I'd urge you to take that into consideration when you're deciding that issue. I guess I'm not sure how the law helps you. The law is pretty clear as one of my colleagues said to you in your opening argument, it's a credibility call. It is, Your Honor, but the Supreme Court recognizes that credibility is more than demeanor. How can we second guess the judge? Easily. Easily? Well, not easily. I'm sorry, that was flippant. Because we have independent third party uncontradicted evidence. The judge had to invent theories to explain away this evidence. Theories, by the way, the government hasn't adopted. One of them is that somehow Enterprise misplaced a record. Have you ever had a light bulb? You're sitting in your nice comfortable chair maybe you have the TV on watching Jon Stewart or somebody and you're sitting there and you're reading a brief where you're reading, you know, the economists and the light bulb goes like this. And you kind of go, oh, that's weird. Has that ever happened to you? I've had things like that happen, yes, Your Honor. But there's nothing in this. Do you think it's beyond the realm of the physically possible that a drug dealer could actually be so unlucky as to be driving through West Virginia and have a tail light go out at that moment when a police officer is watching him, watching the vehicle in which he's traveling? I mean, it's not like it's physically impossible. I have machines that fix themselves all the time. It's amazing. In fact, I had a visitor in Chambers this week whose iPad, she's had the iPad for years and all of a sudden the iPad said, unavailable for the next 17 minutes. She had never heard of such a thing. I've never heard of such a thing. And sure enough, in 17 minutes the iPad was back online. Your Honor, anything's possible. Not anything, but a lot of things. There's nothing in the record to explain how that would have happened in this particular vehicle. Well, how do you explain the blinking light bulb? I don't know, but I'm not pulling someone over. I'm not restricting their liberty. I'm not initiating a criminal investigation based on that. The judge has to weigh the contrary evidence with knowledge that things happen, mechanical things happen in unexplainable ways, and he's got this law enforcement officer sitting there who may be committing perjury. Nobody says they don't. In fact, we know full well they do. But the question before Judge Johnson was, is this officer today in front of me, in this case, sitting there committing perjury? And the judge, when you went back, the judge reconvened the hearing. So the judge didn't say, look, I've made my decision I don't want to hear anymore. The judge was willing to really look at what you present. That is true. He heard the evidence. Yeah. I would just say two things to that. One, there are other cases where the same situation has happened, and courts have said there is no probable cause to base a stop on this. And the second is, if an appellate court didn't, to the extent the government One was a district court case that was not appealed. The other was a 7th Circuit case that was actually a finding of liability in refusing to find immunity for officers in a 1983 suit. Those are the two cases that are in our brief. The other is if the court affirms on this basis and this credibility determination, and we know now from research into how the mind works, how the brain works and everything, that the certainty of someone who is testifying is a poor predictor of their accuracy. But if the court affirms this situation it's carte blanche for officers to pull over someone that they suspect might be up to no good but can't prove it. I think that's an overstatement, but I don't fault you for that. Two things very briefly on the sentencing issue. One, the Southern District of West Virginia has no pharmaceutical industry. Every pill that's sold in the Southern District of West Virginia comes from outside the state. And secondly, there was no evidence that the cash that Mr. McGee had at the time he stopped at the bus station, that it came from West Virginia. My time is up. Thank you, Your Honor. Thank you very much, counsel. As always, we appreciate your presentation. Okay, we'll come down to Greek Council and take a brief recess.
judges: Andre M. Davis, Barbara Milano Keenan, Henry F. Floyd